UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| PHARMSCRIPT, L.L.C., <br><br> Plaintiff, <br><br> -against- <br><br> ST. FRANCIS OF WILLIAMSVILLE NURSING HOME, <br><br> Defendant. | Civil Action No. 17-cv-5966 <br><br> **AFFIDAVIT OF CHANA HOFF** |

I, Chana Hoff, of full age, being duly sworn according to law, upon my oath, depose and say:

1. I am the Controller for PharmScript, L.L.C. ("PharmScript"), Plaintiff in the above-captioned action.

2. I submit this affidavit in support of PharmScript's motion for default judgment against Defendant St. Francis of Williamsville Nursing Home ("Defendant" or the "Facility") pursuant to Fed. R. Civ. P. 55(b). I have personal knowledge of the facts stated herein.

3. PharmScript is a New Jersey limited liability company with its principal place of business located at 150 Pierce Street, Somerset, New Jersey.

4. On May 5, 2015, PharmScript entered into a Pharmaceutical Services Contract (the "Agreement") with the Facility. A true and correct copy of the Agreement is attached hereto as Exhibit A.

5. In connection with the negotiation and performance of the Agreement, the Facility made numerous phone calls to PharmScript in New Jersey, sent letters and facsimiles to PharmScript in New Jersey, and made payment to PharmScript in New Jersey.

1

6. The Agreement provides:

***[PharmScript] shall submit invoices on a monthly basis to the Facility for the services rendered which are the responsibility of the Facility .... All invoiced amounts are due within sixty (60) days from the date of the invoice.***

*See* Exhibit A at ¶ 2.9 (emphasis added).

7. The Agreement further provides, in the event of non-payment, a "finance charge of one and a half (1.5) percent per month may be assessed". *See* Exhibit A at ¶ 1.9.

8. The Agreement further provides, The Facility must also "reimburse [PharmScript] for any and all costs incurred to collect payment from the Facility, including, without limitation, reasonable attorneys' fees." *See* Exhibit A at ¶ 2.9.

9. Pursuant to the Agreement, PharmScript submitted monthly invoices to the Facility for pharmaceutical services rendered which are the responsibility of the Facility.

10. The Facility failed to pay the full invoiced amounts within sixty (60) days from the date of the invoice.

11. As of October 17, 2017, the following sums are due and owing pursuant to the Agreement:

   a. $646,050.44 for pharmaceutical services, including a 1.5% finance charge, comprised of $644,674.97 in sums currently due and owing, and $1,375.47 in sums anticipated to be due and owing as of November 29, 2017; and

   b. $22,927.47 for collection costs and attorneys' fees.

2

12. A true and correct copy of PharmScript's open account receivable for the Facility is attached hereto as Exhibit B.

_____
Chana Hoff

State of New Jersey
County of Somerset

Sworn to before me this 18 day of October, 2017

_____
Notary Public

MARY C HOLMES
NOTARY PUBLIC STATE OF NEW JERSEY
COMMISSION # 2200842
COMMISSION EXPIRES MAY 7, 2022

3

# **EXHIBIT A**



# PHARMACEUTICAL SERVICES CONTRACT

## PHARMSCRIPT, LLC

### AND

St. Francis of Williamsville Nursing Home

## PHARMACEUTICAL SERVICES CONTRACT

This Pharmaceutical Services Contract (the "Agreement") dated May 5, 2015 (the "Effective Date") by and between PharmScript, LLC, a New Jersey limited liability company with its office located at 81 Glendale Avenue, Edison NJ 08817 (hereinafter, the "Pharmacy") and   St. Francis of Williamsville Nursing Home,  with its office located at  147 Reist Street, Williamsville, NY 14221  (hereinafter, the "Facility").

### WITNESSETH:

**WHEREAS**, the Pharmacy is a licensed pharmacy specializing in total pharmaceutical services for nursing homes and other long term health care facilities;

**WHEREAS**, the Facility desires to engage an independent pharmacy to provide medications for residents of the Facility ("Residents");

**WHEREAS**, the Facility is a nursing facility engaged in providing sub-acute and long-term health care and desires to retain the pharmaceutical services offered by the Pharmacy

**WHEREAS**, Facility wishes to engage the Pharmacy to provide pharmaceutical services and the Pharmacy desires to accept such engagement on the terms and conditions contained herein.

**NOW, THEREFORE**, in consideration of the mutual representations, warranties, covenants and agreements herein contained, the parties hereto agree as follows:

### ARTICLE I

### SERVICES

1.1. <u>Engagement.</u>  Facility hereby retains the Pharmacy as the designated provider of pharmaceutical services to the Facility for the benefit of the Residents in all matters required or requested in connection with the pharmaceutical needs of such Residents and the operation of the Facility.  The term "Designated Provider" shall mean that (i) with respect to the Facility, the Pharmacy shall serve as the exclusive provider of pharmaceutical services at the Facility and (ii) with respect to the Residents, the Pharmacy shall be the only provider from which the Facility recommends or designates that pharmaceutical services be purchased.  To this end, the Facility shall not authorize, at any time, the use of another pharmacy for any Resident.  Notwithstanding the foregoing, each Resident shall have the right to choose an alternate provider of pharmacy services provided that such provider can meet the quality of care standards established by the Facility and can provide services in a manner that complies with the policies and procedures of the Facility.

1.2. <u>Services.</u>    The Pharmacy will provide prescription and non-prescription drugs including intravenous drugs, and pharmaceutical supplies (collectively, "Medications") as ordered by physicians and other health care professionals legally authorized to prescribe such products.

1.3.    <u>Methods of providing services.</u>

(a)    The Pharmacy shall (i) be responsible for all third party billing for Medicaid, private pay and private insurance; (ii) Maintain drug profiles on each of the Residents; (iii) Provide drug information to the Facility's licensed professional staff regarding Medications; (iv) Provide, maintain and replenish, in a prompt and timely manner, an emergency drug supply as

approved by the Facility's Quality Assurance Committee and any other committees of the Facility (v) Any emergency kits provided will be the property of the Pharmacy as prescribed by law; (vi) Ensure a representative from the Pharmacy is available for attendance at the Facility's Quality Assurance Committee, the Infectious Control Committee and any other committee meetings, with reasonable prior notice and during regularly scheduled visits to the Facility; and (vii) Conduct, when requested by the Facility Administrator, and as mutually agreed to by the Pharmacy and the Facility, programs for in-service education for subjects related to the pharmaceutical services rendered; said in-service education to be conducted by the pharmacist or his/her designee, during regularly scheduled visits to the Facility.

(b) Medications will generally be provided to the facility in a 30-dose bingo drug dispensing system, except where an alternate supply or packaging is necessary. This would include scenarios where medically necessary, or for Brand or Single Source Generic Medications where CMS regulation dictates a 14-day supply for third party dispensing.

(c) The Pharmacy will deliver Medications and provide services to the Facility seven (7) days a week, 365 days a year, with modified schedules on national holidays based on a daily delivery schedule mutually determined by the Facility and the Pharmacy. Emergency delivery of Medications will be done by the Pharmacy during normal business hours, except for circumstances beyond the Pharmacy's reasonable control, and emergency services will be available after hours through an answering service with a pharmacist on-call.

(d) The Pharmacy will establish an emergency system for backup and/or interim order dispensing.

(e) The Facility shall initially provide the Pharmacy with copies of each patient's physician medication order sheets. From these initial records, the Pharmacy will generate the following monthly computerized documentation:

- Physician Order Sheets for each resident will be presented to the Facility on a monthly basis and shall be reviewed and signed by the respective physicians and a carbon copy picked up and returned to the Pharmacy by its driver on a continuous basis. The physician's signature on the Order Sheet shall constitute a renewal for the prescriptions contained therein as required by law and shall be utilized by the Pharmacy's pharmacists, as the basis and guidelines for the dispensing of drugs to the respective residents.
- The Pharmacy shall also prepare and maintain, on a current and continuous basis, for each resident Medication Administration Records as well as Treatment Administration Records.

(f) Monthly, computer generated Physician's Order Sheets, Medication Administration Records and Treatment sheets will be reviewed for accuracy by the Pharmacy, but will be required to be reviewed by the Facility's nurses and prescribers for accuracy before the forms are put into use each month.

(g) The Facility agrees to transmit required information to the Pharmacy on a continual basis and in a timely fashion. The Pharmacy agrees to comply with all requirements of The Health Insurance Portability and Accountability Act (HIPAA), as amended and to comply with the Facility's current HIPAA policies, and reasonable amendments, regarding privacy, confidentiality and security of information protected by HIPAA.

1.4. Equipment

(a) The Pharmacy will provide to the Facility medication and treatment carts as mutually determined by the Pharmacy the Facility's Director of Nursing. This equipment will be the property of the Pharmacy. The Facility will be responsible for payment of bills associated with repairs of the medication and treatment carts if they are damaged while in use (including lock changes, keys, etc.).

(b) The Pharmacy shall provide the Facility with facsimile equipment (without lines) necessary for the transmission of patient status information i.e., private or Medicaid, guarantor information, daily medication orders, prescription changes, new patient admissions, patient discharges, as well as any and all other information pertinent to the resident's medication requirements and/or necessary for the Pharmacy to maintain the quality and level of service rendered to the Facility. The equipment will remain the property of the Pharmacy. The Facility will pay for installation charges (for a direct dial line), supplies, and phone charges. The Facility will use the equipment only for Pharmacy-related business (or pay the Pharmacy the fair market value for any use of equipment for non-Pharmacy related business).

1.5. Standards of providing Services. The Pharmacy shall provide its services in compliance with all applicable (i) local, state and federal laws and regulations, (ii) Joint Commission on the Accreditation of Healthcare organizations ("JCAHO") standards and (iii) the Pharmacy's Policies and Procedures Manual.

## ARTICLE II

## BILLING AND PAYMENT

2.1. Facility Information. The Facility will provide the Pharmacy with an accurate daily census report that will serve to inform the Pharmacy of all Resident's payor status and of all pertinent billing information. The Facility will also inform the Pharmacy of bed number changes, discharges and admissions on a daily basis. It is understood and agreed by the parties that the Facility shall promptly notify the Pharmacy of the status and status changes of all Residents (i.e., private or Medicaid in a timely fashion). If the Facility fails to notify the Pharmacy of a patient status change and the Medication is not covered after the change is made such charge will be billed to the Facility.

2.2. Medicaid All Medicaid reimbursable prescriptions for Medicaid eligible Residents serviced in the Facility shall be billed directly to State Medicaid by the Pharmacy. The Facility will not be billed any additional dispensing fees for legend drugs billed to Medicaid directly by the Pharmacy. The Pharmacy will hold Medicaid billings for Residents that have applied for Medicaid for up to six (6) months. After the six (6) month period, or if a Resident is denied Medicaid coverage before that time or the coverage date is not retroactive to the initial date of service, the Pharmacy will bill the Facility, at the facility pricing schedule, for all prior services and charges that have not been paid by Medicaid, including all billings held by the Pharmacy. Should Facility terminate Pharmacy contract, any Pending Medicaid charges held by Pharmacy will be billed to Facility and are immediately due. In no event will Facility be responsible for any services for which Pharmacy receives payment from Medicaid.

2.3. Private Pay. All legend and non-legend drugs dispensed for private paying residents will be billed at the Pharmacy's standard rates of pricing for medications, as adjusted from time to time. The Pharmacy will bill Residents and/or payment guarantors or other persons responsible for

payment (the "Responsible Party") directly for such services. The Facility will provide guarantor and other information necessary for The Pharmacy to bill the Responsible party. The Facility will fax a copy of The Pharmacy's "Individual Long-Term Care Pharmacy Services Agreement" signed by the Responsible Party, to the Pharmacy for each newly admitted Resident. This form will be incorporated into the Facility's initial admission paperwork for all Residents regardless of initial payor status.

2.4. <u>Third Party Payments.</u> The Pharmacy will bill prescription charges directly to those private prescription plans (ex. Paid Prescriptions, AARP, Aetna, PAAD) with which it has contract to fill prescriptions. Any co-payments or portions of the prescription bill not paid by the prescription plan will be billed to the Responsible Party. The Pharmacy reserves the right to abstain from participation with third party payors and to cancel participation contracts with third party payors. In the event that the Pharmacy does not participate with a Resident's third party plan, the Pharmacy will provide all documents within the Pharmacy's control (including, but not limited to: billing statements which are complete with date of service, pharmacist certification signature and National Drug Code) needed for the resident/guarantor to obtain reimbursement. Where Facility holds contracts with managed care plans or other third party payors, it is the responsibility of Facility to be aware of such contract terms as it relates to Pharmacy billing or carveouts and to provide the Pharmacy with true, accurate and complete information about such contact terms. Pharmacy will bill such plans or payors as instructed by Facility.

2.5. <u>Part D.</u> All prescriptions dispensed for Residents with Medicare Part D coverage only (no Medicaid) under plans with contracts with the Pharmacy will be billed directly to the applicable prescription drug plan (PDP) with any co-payments or non-covered charges, including charges for OTC drugs and non-formulary drugs being billed to the Responsible Party. The Pharmacy will advise the Facility when a prescription drug requires a prior authorization or is not covered (non-formulary drug) by the Resident's PDP. The Pharmacy will also assist and advise the Facility in obtaining prior authorization or approval to use a non-formulary drug when a physician or prescriber deems that drug to be medically necessary. In the event that the PDP denies approval of a non-formulary drug and the physician or prescriber declines to order a covered alternate drug, the original drug will be dispensed and the Responsible Party will be billed.

2.6. <u>Dual Eligibles.</u> All prescriptions dispensed for residents with Medicare Part D coverage as well as Medicaid coverage (dual eligible) under plans with contracts with the Pharmacy will be billed directly to the applicable prescription drug plan (PDP) with any co-payments or non-covered charges, billed to the plans wherever LIS is updated. The Pharmacy will advise the Facility when a prescription drug is not covered (non-formulary drug) by the resident's PDP. The Pharmacy will also assist and advise the Facility in obtaining approval to use a non-formulary drug when a physician or prescriber deems that drug to be medically necessary. In the event that the PDP denies approval of a non-formulary drug and the physician or prescriber declines to order a covered alternate drug, the original drug will be dispensed and the Facility will be responsible for payment of the charges. In this case, drugs will be billed to The Facility at the Usual and Customary rate. For prescription drugs where there may be "wrap around" coverage by Medicaid, the Pharmacy will bill State Medicaid.

2.7. <u>Non-Prescription Drugs.</u> The Facility may order OTC from the Pharmacy and such drugs will be billed to the Facility at bulk discounted prices in accordance with the Pharmacy's normal price schedule.

2.8. <u>Returns.</u> Returns may be accepted where permitted by law. Refrigerated products, opened drops, creams, and ointments, opened or partially used inhalers, or any other items that can not be restocked are not eligible for credit. Special order medications and items which may only be dispensed in their full quantities will not be eligible for credit. No restock fee will apply.

2.9. <u>Invoices</u>. The Pharmacy shall submit invoices on a monthly basis to the Facility for the services rendered which are the responsibility of the Facility, including but not necessarily limited to, medications provided under a resident's Medicare Part A stay or where applicable law or Third Party mandate requires that the Facility be billed for drugs and supplies. All invoiced amounts are due within sixty (60) days from the date of the invoice. A finance charge of one and a half (1.5) percent per month may be assessed on unpaid balances after sixty (60) days. In the event of non-payment under these terms above, the Pharmacy reserves the right to terminate this agreement with written notice to the Facility. The Facility will notify the Pharmacy in writing within twenty (20) days of the billing date of the Pharmacy's invoice indicating any amounts in dispute. In the event of any dispute arising from any claim or bill submitted by the Pharmacy, the Pharmacy will have access to all reasonable and necessary documents and records that would, in the discretion of the Pharmacy, tend to sustain its claim. The Facility agrees to reimburse the Pharmacy for any and all costs incurred to collect payment from the Facility, including, without limitation, reasonable attorneys' fees.

2.10. <u>Changes in Fees</u>. If changes in (i) Federal, State or local law, regulation or controlling legal interpretation, (ii) local market conditions, or (iii) other factors beyond the reasonable control of the Pharmacy occur that increase the cost to the Pharmacy to carry out its obligations hereunder then Pharmacy may, no more often than every 3 months, increase its rates hereunder by delivering written notice of such increase to the Facility at least thirty (30) days in advance of the effective date of such increase.

2.11. <u>Negotiation</u>. All fees and services noted in the above categories will be negotiated between the two parties before any renewal term, but shall remain as set forth herein unless otherwise mutually agreed by the parties. Any such mutually determined changes will be reflected as contract amendments.

2.12. <u>Miscellaneous</u>. The Terms and Conditions attached hereto as Exhibit A are incorporated herein and made a part of this Agreement.

## ARTICLE III

## RESPONSIBILITIES AND DUTIES OF FACILITY

3.1. <u>Operational</u>. The Facility will be responsible for the implementation of the Pharmacy's Policies and Procedures upon the commencement of this Agreement. The Facility will also provide a copy of the Pharmacy's formulary and related procedures to key prescribing physicians and any consultant pharmacist furnishing services at the Facility, encourage the physicians and pharmacists to use the formulary and procedures in order to assist the physicians and Pharmacy in improving drug therapy for residents, and refrain from distributing or recommending the use of any other formulary at the Facility. In addition, the Facility will make available to the Pharmacy adequate working and storage space to allow the Pharmacy to fulfill the services required of Pharmacy under this Agreement, including, but not limited to, adequate space at each nursing station for the storage of medication carts, containers or cards and equipment to be provided by the Pharmacy. The Facility and the Pharmacy will work together to instruct the Facility personnel to utilize the equipment properly.

3.2. <u>Equipment</u>. The Facility shall (i) properly care for and maintain any and all equipment provided by the Pharmacy in accordance with this Agreement and (ii) Name Pharmacy or related Lessor as additional insured for such property, upon request (iii) immediately return to the Pharmacy all of the aforementioned equipment in good operating condition, upon termination of this agreement.

3.3. <u>Right to Choose</u>. The Facility will comply with all applicable federal, state and local laws and regulations regarding a Resident's right to choose his or her own pharmacy.

3.4. <u>Access</u>. The Facility will give the Pharmacy reasonable access to all resident records, facilities and supplies necessary for the performance of the Pharmacy duties under this Agreement, and the Pharmacy will furnish to the Facility, upon request, all information relating to the Products furnished to the Facility or to Facility residents.

## ARTICLE IV

## TERM AND TERMINATION

4.1. <u>Term</u>. The initial term (the "Initial Term") of this Agreement shall be from the Effective Date for one year, unless sooner terminated pursuant to Section 4.3 below.

4.2. <u>Renewal Term.</u> This Agreement shall automatically renew for a one - year term (a "Renewal Term") upon the expiration of the Initial Term and each subsequent Renewal Term, unless written notice of non-renewal is given, in the manner specified in Exhibit A under Notices by either party at least ninety (90) days prior to the expiration of the Initial or any Renewal Term.

4.3. <u>Termination</u>

(i) <u>By Pharmacy or Facility</u>. Either Party may terminate this Agreement, with or without cause, upon thirty (30) days notice to the other Party, in the manner specified in Exhibit A under Notices.

Notwithstanding the foregoing, no notice of termination by the Facility shall be effective until the Facility has paid all outstanding invoices in full.

4.4. <u>Effects of Termination.</u>

(a) <u>Survival.</u> The indemnification, contribution and duty to cooperate provisions of this Agreement shall survive the expiration of this Agreement or other termination of this Agreement indefinitely.

(b) <u>Fees and Expenses.</u> Client shall remain liable for all fees and expenses under this Agreement for periods through the date of termination. Upon termination of this Agreement for any reason, all sums due the Pharmacy shall be remitted by the Facility within fifteen (15) days of such termination. If the outstanding balance is not paid on time, the Pharmacy will charge the Facility two percent (2%) interest per month to the outstanding balance until it is paid.

4.5. <u>Counterparts; Facsimile</u>. This Agreement may be executed in one or more counterparts, including by facsimile, all of which shall be considered one and the same agreement, and shall become effective when one or more such counterparts have been signed by each of the parties and delivered to the other party.

IN WITNESS WHEREOF, the parties hereto, intending to be legally bound hereby, have duly executed this Pharmacy Services Contract on the date first above written.

| PHARMSCRIPT, LLC | ST. FRANCIS OF WILLIAMSVILLE |
|---|---|
| By: _[signature]_ | By: _[signature]_ |
| Name: | Name: Michael Segal |
| Title: | Title: CEO |

## Pricing Schedule

| Services | Facility |
|---|---|
| Oral/Topical Medications | Brand: WAC – 6.25% (If WAC not found, AWP-25%) <br> Generic: AWP-65% |
| IV Per Diem Rate | $80 up to two therapies <br> $160 three or more therapies |
| IV Exclusions | Oral/Topical Rate plus IV Per Diem Rate |
| IV Pump Rentals | $5.00 per day |
| Hydration Therapy | $28 per day |
| TPN | $140 per day |
| IV Supplies | AWP-15% |
| House Stock | AWP-10% |

**No individual medication or item shall be priced below Pharmacy cost for such product, taking any discounts into consideration**

## EXHIBIT A
## TERMS AND CONDITIONS

### REPRESENTATIONS AND WARRANTIES OF FACILITY

The Facility makes the following representations and warranties to Pharmacy, each of which is true and correct on the date hereof:

1. The Facility is a company duly organized, validly existing and in good standing under the laws of the State of New York and has all requisite power and authority to own, lease, operate and otherwise hold its properties and assets and to carry on its businesses as presently conducted.

2. The Facility has all requisite power and legal authority to execute and deliver this Agreement and to perform its obligations hereunder. The execution and delivery of this Agreement by the Facility and the performance by it of its obligations hereunder have been duly authorized and no other action on the part of the Facility is necessary to authorize the execution and delivery of this Agreement or the consummation of the obligations of the Facility contemplated hereby. This Agreement has been duly and validly executed and delivered by the Facility and constitutes a legal, valid and binding obligation of the Facility enforceable against it in accordance with its terms.

3. The Facility has all consents of any governmental authority or any other Person that is necessary for consummation of the obligations of the Facility contemplated by this Agreement. Neither the execution and delivery of this Agreement by the Facility nor the consummation by the Facility of the obligations contemplated by this Agreement nor compliance by the Facility with any of the provisions hereof or thereof will (a) conflict with or result in any breach of any provision of the articles of organization or operating agreement of the Facility, (b) result in a violation or breach of, or constitute (with or without due notice or lapse of time or both) a default (or give rise to any right of termination, modification, cancellation or acceleration or loss of material benefits) under, any of the terms, conditions or provisions of any Contract to which the Facility is a party or may be subject or by which the Facility or any of its properties or assets may be bound or (c) violate any order, writ, injunction, decree, statute, treaty, rule or regulation applicable to the Facility, or any of its properties or assets.

### REPRESENTATIONS AND WARRANTIES OF PHARMACY

The Pharmacy makes the following representations and warranties to the Facility, each of which is true and correct on the date hereof:

1. Pharmacy is a limited liability company duly organized, validly existing and in good standing under the laws of the State of New Jersey and has all requisite power and authority to own, lease, operate and otherwise hold its properties and assets and to carry on its businesses as presently conducted.

2. Pharmacy has all requisite power and legal authority to execute and deliver this Agreement and to perform its obligations hereunder. The execution and delivery of this Agreement by Pharmacy and the performance by it of its obligations hereunder have been duly authorized and no other action on the part of Pharmacy is necessary to authorize the execution and delivery of this Agreement or the consummation of the obligations of Pharmacy contemplated hereby. This Agreement has been duly and validly executed and delivered by Pharmacy and constitutes a legal, valid and binding obligation of Pharmacy enforceable against it in accordance with its terms.

3. Pharmacy has all material consents of any governmental authority or any other Person that is necessary for consummation of the obligations of Pharmacy contemplated by this Agreement. Neither the execution and delivery of this Agreement by Pharmacy nor the consummation by Pharmacy of the obligations contemplated by this Agreement nor compliance by Pharmacy with any of the provisions hereof or thereof will (a) conflict with or result in any breach of any provision of the articles of organization or operating agreement of Pharmacy, (b) result in a violation or breach of, or constitute (with or without due notice or lapse of time or both) a default (or give rise to any right of termination, modification, cancellation or acceleration or loss of material benefits) under, any of the terms, conditions or provisions of any Contract to which Pharmacy is a party or may be

subject or by which Pharmacy or any of its properties or assets may be bound or (c) violate any order, writ, injunction, decree, statute, treaty, rule or regulation applicable to Pharmacy, or any of its properties or assets.

4. Pharmacy holds all material permits necessary for the lawful conduct of its Business under and pursuant to all applicable laws. All Material Permits have been legally obtained and maintained and are valid and in full force and effect. The Pharmacy is licensed by the New Jersey Board of Pharmacy in accordance with Title 45, Chapter 14, of the Revised Statues of New Jersey and as an out of state pharmacy with the New York, Pennsylvania, Delaware and Maryland Boards of Pharmacy.

## INDEMNIFICATION

1. Pharmacy Indemnification. The Pharmacy agrees to indemnify and hold harmless the Facility and its owners, members, affiliates, parents, subsidiaries, managers, officers, directors, subcontractors, successors, assigns, agents, trustees and employees against any and all loss, damage, liability and expense, including court costs and reasonable legal fees which directly result from or arise out of the negligent, reckless or willfully malfeasant acts or omissions of the Pharmacy, its agents and employees.

2. Facility Indemnification. The Facility agrees to indemnify and hold harmless the Pharmacy and its owners, members, affiliates, parents, subsidiaries, managers, officers, directors, subcontractors, successors, assigns, agents, trustees and employees against any and all loss, damage, liability and expense, including court costs and reasonable legal fees which directly result from or arise out of the negligent, reckless or willfully malfeasant acts or omissions of the Facility, its agents and employees.

3. Notification. Each party agrees to promptly notify the other party of any claims or demands which arise and for which indemnification hereunder is sought.

4. Limitations. Notwithstanding anything to the contrary contained herein, the Pharmacy's indemnification obligations shall not exceed the actual amount paid to the Pharmacy for the services performed pursuant to this Agreement and shall not include expectancy, incidental, indirect or consequential damages (including lost profits), punitive, continuing, criminal, exemplary, rescissory, remote, special, speculative, or unliquidated damages or any other damages except those expressly permitted herein, whether in an action for or arising out of breach of contract, for tort, or any other cause of action.

## MISCELLANEOUS

1. Retention of Control. The Facility shall at all times continue to exercise control over the assets and operations of the Facility, and Pharmacy shall perform its responsibilities as described in this Agreement. By entering into this Agreement, Facility does not delegate to Pharmacy any of the powers, duties and responsibilities vested in the Facility by law, or by its governance documents.

2. Insurance. Both parties agree to keep in force with companies licensed to do business in the State of New Jersey, professional and liability insurance with minimum limits of one million dollars ($1,000,000) per occurrence and three million dollars ($3,000,000) in the aggregate, and provide evidence of such insurance.

3. Further Efforts. From time to time after the execution of this Agreement, without additional consideration, each party hereto will (or, if appropriate, cause its Affiliates to) execute and deliver such further instruments and take such other action as may be necessary or reasonably requested by the other party to allow Pharmacy to perform its obligations contemplated by this Agreement and to provide the other party with the intended benefits of this Agreement.

4. Governing Law. This Agreement will be governed by and construed in accordance with the internal laws of the State of New Jersey applicable to agreements made and to be performed entirely within such State, without regard to the conflicts of law principles that would require the application of any other law.

5. Attorneys' Fees. If any action or proceeding for the enforcement of this Agreement is brought with respect to or because of an alleged dispute, breach, default or misrepresentation in connection with any of the provisions hereof, the successful or prevailing party shall be entitled to recover reasonable attorneys' fees, expenses and other costs incurred in that action or proceeding, in addition to any other relief to which it may be entitled.

6. <u>Waiver; Remedies Cumulative</u>. The rights and remedies of the parties to this Agreement are cumulative and not alternative. Neither any failure nor any delay by any party in exercising any right, power or privilege under this Agreement will operate as a waiver of such right, power or privilege, and no single or partial exercise of any such right, power or privilege will preclude any other or further exercise of such right, power or privilege or the exercise of any other right, power or privilege. To the maximum extent permitted by applicable law, (a) no claim or right arising out of this Agreement can be discharged by one party, in whole or in part, by a waiver or renunciation of the claim or right unless in writing signed by the other party; (b) no waiver that may be given by a party will be applicable except in the specific instance for which it is given; and (c) no notice to or demand on one party will be deemed to be a waiver of any obligation of that party or of the right of the party giving such notice or demand to take further action without notice or demand as provided in this Agreement.

7. <u>Duty to Cooperate</u>. In the event that a third party, an employee or a government agency or entity files any type of claim, lawsuit or charge against Pharmacy, Facility or both, alleging a violation of any law or failure to do something which was otherwise required by law, Pharmacy and Facility mutually agree to cooperate with each other in the defense of any such claim, lawsuit or charge. Pharmacy and Facility will, subject to appropriate provisions regarding attorney-Facility and other confidentiality privileges, make available to each other upon request any and all records, electronic records, data or documents that either party has in its possession which relate to any such claim, lawsuit or charge. However, neither party shall have the duty to cooperate with the other if the dispute is between the parties themselves, nor shall this provision preclude the raising of cross claims or third party claims between Facility and Pharmacy.

8. <u>Preservation of and Access to Books and Records.</u>

    Pursuant to Paragraph 1395x(v)(I) of Title 42 of the United States Code, until the expiration of four (4) years after each provision of services under this Agreement, the Pharmacy shall make available, upon written request of the Secretary of the United States Department of Health and Human Services or upon request to the Comptroller General of the United States General Accounting Office or any of their duly authorized representatives, a copy of this Agreement and such books, documents, and records as are necessary to certify the nature and extent of the costs incurred under this Agreement.

    The Pharmacy further agrees that in the event the Pharmacy carries out any of its duties under this Agreement through a subcontract, with a value or cost of ten thousand dollars ($10,000) or more over a twelve (12) month period, with a related organization, such contract shall contain a clause to the effect that until the expiration of four (4) years after the furnishing of such services pursuant to such subcontract, the related organization shall make available, upon written request, to the Secretary of the United State Department of Health and Human Services or upon request of the Comptroller General of the United States General Accounting Office, or any of their duly authorized representatives, a copy of such subcontract and such books, documents, and records of such organization as are necessary to verify the nature and extent of such costs.

9. <u>Notices</u>. All notices or other communications hereunder shall be in writing and shall be deemed given (a) when hand delivered personally to the recipient, (b) one (1) Business Day after being sent to the recipient by reputable overnight courier service (charges prepaid), or (c) five (5) days after being mailed to the recipient by certified or registered mail, return receipt requested and postage prepaid, to the parties at the addresses listed in the first paragraph of this Agreement (or at such other addresses for a party as shall be specified by like notice).

10. <u>No Solicitation of Employees</u>. During the term of this Agreement, neither party shall, and both parties shall cause each of their Affiliates not to, directly or indirectly, without the prior consent of the other party, employ, attempt to employ, or cause or encourage others to employ or attempt to employ employees or contractors of the other party or its subsidiaries.

11. <u>Assignment</u>. This Agreement shall be binding upon, and shall be enforceable by and inure solely to the benefit of the parties hereto and their respective successors and assigns; provided, however, that this Agreement and the rights and obligations hereunder shall not be assignable or transferable by any party without the prior written consent of the other parties hereto, except that Pharmacy's rights hereunder may be assigned for collateral purposes to any financing party and may be assigned to any Affiliate of Pharmacy. Upon transfer of the assets of the Facility, the Facility shall use its best efforts to have the transferee assume this contract. If the Facility sells a material portion of its assets then all outstanding billed invoices shall become immediately due and payable at the time of such sale and shall accrue interest at the rate of 2% a month if not paid concurrently with

such sale. Any unbilled amounts whether due or not yet due pursuant to provisions of this Agreement other than this section shall become due immediately upon notice to Facility of the amount(s) owed and shall accrue interest at the rate of 2% a month if not paid within seven days of receipt by Facility of such notice

12. <u>No Third-Party Beneficiaries</u>. Except as expressly provided in this Agreement, this Agreement is for the sole benefit of the parties hereto and their permitted assigns and nothing herein expressed or implied shall give or be construed to give to any, other than the parties hereto and such assigns, any legal or equitable rights, remedy or claim hereunder.

13. <u>Amendments</u>. No amendment to this Agreement shall be effective unless it shall be in writing and signed by each of the parties hereto.

14. <u>Interpretation.</u> The headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.

15. <u>Entire Agreement</u>. This Agreement contains the entire agreement and understanding between the parties hereto with respect to the subject matter hereof and supersedes all prior oral and written agreements and understandings relating to such subject matter.

16. <u>Severability</u>. If any provision of this Agreement or the application of any such provision to any Person or circumstance shall be held invalid, illegal or unenforceable in any respect by a court of competent jurisdiction, such invalidity, illegality or unenforceability shall not affect any other provision hereof.

17. <u>Mutual Drafting</u>. The parties hereto are sophisticated and have been represented by lawyers who have carefully negotiated the provisions hereof. As a consequence, the parties do not intend that the presumptions of any laws or rules relating to the interpretation of contracts against the drafter of any particular clause should be applied to this Agreement and therefore waive their effects.

## INDIVIDUAL LONG TERM CARE PHARMACY SERVICES AGREEMENT

This is a contract for pharmacy services between PharmScript

_____ and _____
         (The Resident)                    (The Guarantor/Responsible Party)

We the resident and/or guarantor (responsible party) wish to contract with PharmScript (The Pharmacy) and understand that The Pharmacy will supply medications and related pharmacy or medical/surgical items as ordered by authorized healthcare professionals of the long-term care facility (The Facility) in which the resident resides. The Pharmacy agrees to dispense medications and related medical/surgical supplies in accordance with all State and Federal Regulations pertaining to pharmacy practice and long-term care facilities. Services provided include, but are not limited to, special packaging of medications to comply with State and Federal packaging requirements for drugs administered in long-term care facilities, monthly computerized physician and nursing documentation forms for required medical record keeping, and delivery of pharmaceuticals/medical supplies/surgical supplies to the long-term care facility in which the resident resides.

The Pharmacy agrees to bill third party insurers with which it has contracts to provide pharmacy services, when coverage is available, and to forward any balances to the resident or responsible party for payment. In the event that The Pharmacy is a non-participating provider of services relative to the resident's prescription plan, the resident and responsible party will be responsible for payment to The Pharmacy. The Pharmacy will supply all necessary documentation to the resident and/or responsible party so that the resident or responsible party may pursue reimbursement from the prescription plan. The Pharmacy reserves the right to abstain from participation in any third party prescription plan and the right to cancel contracts with third party prescription plans.

The resident or guarantor will not be billed for pharmacy service charges during any time that the resident is covered under Medicare A. The Pharmacy will bill State Medicaid for covered prescription drugs when that coverage is available. The Pharmacy will bill the resident or responsible party during periods that the resident is considered to be "pending Medicaid." The resident and responsible party will be responsible for charges assessed during any time period which the resident is determined, by State Medicaid, to be "ineligible." The Pharmacy will refund any applicable payments made by the resident or responsible party once State Medicaid has begun to make payments.

All payments are to be made within thirty (30) days after receipt of the monthly billing. In the event that payment is not received at thirty-one (31) days following the monthly statement date, The Pharmacy reserves the right to access an eighteen percent (18%) APR and can refer the account to collection or its legal department for litigation. Any collection or attorney fees or costs incurred will be the responsibility of the resident and guarantor if collection becomes necessary.
The Pharmacy, a "Covered Entity" as defined by the Health Insurance Portability and Accountability (HIPAA) of 1996, agrees to keep patient health information secure and confidential in accordance with all regulations related to HIPAA and the use of Protected Health Information (PHI)

```
FACILITY
NAME:_____

ADMIT DATE: _____
```

**FAX TO PHARMSCRIPT AT (732) 985-1663**

PHARMSCRIPT
81 Glendale Avenue
Edison, NJ 08817
PHONE: 908-389-1818    FAX: (732) 985-1663

We, the resident and responsible party provide the following billing information:

_____
Resident Name

Date of Birth:—————————————    Social Security#:———————————————

**BILL WILL BE SENT TO:**

_____
Guarantor/Responsible Party Name

_____
Street Address

_____    _____    _____
City                        State        Zip

_____    _____
Home Telephone Number      Work Telephone Number

The resident and responsible party agrees to the terms outlined in this document and agreement is in effect as of the date of the resident's admission into the long-term facility.

Accepted by the Resident and Guarantor:

_____
Resident Name

_____
Responsible Party Name Printed

_____
Responsible Party Signature

**Is a Private Third Party Prescription Insurance Plan Available?**
____Yes, A copy of front and back of card are attached. Please send all prescription information.
____NO

Medicare#:_____
(If Medicare Part D is applicable, PDP information is attached). Please send copy of Medicare Part D prescription plan
Medicaid#:_____
PACE#:_____

# **EXHIBIT B**

12:35 PM
10/17/17
Accrual Basis

Case 3:17-cv-05966-BRM-DEA   Document 10-1   Filed 10/18/17   Page 20 of 20 PageID: 70

PharmScript, LLC
Customer Open Balance
All Transactions

| Type | Date | Num | Memo | Due Date | Open Balance | Orig Amount | # Days Late as of 10/17/17 | Interest Rate | Total Balance due including interest |
|---|---|---|---|---|---|---|---|---|---|
| **FAC - St Francis** | | | | | | | | 1.5% | |
| Invoice | 05/31/2015 | 5.15 | | 07/30/2015 | 44,954.26 | 44,954.26 | 797 | 1,472.41 | 46,426.67 |
| Invoice | 06/30/2015 | 6.15 | | 08/29/2015 | 24,126.09 | 46,502.76 | 768 | 761.46 | 24,887.55 |
| Invoice | 07/31/2015 | 7.15 | | 09/29/2015 | 12,014.09 | 33,488.28 | 738 | 364.37 | 12,378.46 |
| Invoice | 08/31/2015 | 8.15 | | 10/30/2015 | 13,527.11 | 39,269.05 | 707 | 393.03 | 13,920.14 |
| Invoice | 09/30/2015 | 9.15 | | 11/29/2015 | 21,264.75 | 45,998.08 | 678 | 592.50 | 21,857.25 |
| Invoice | 10/31/2015 | 10.15 | | 12/30/2015 | 13,775.25 | 38,636.54 | 647 | 366.27 | 14,141.52 |
| Invoice | 11/30/2015 | 11.15 | | 01/29/2016 | 3,670.10 | 20,236.76 | 618 | 93.21 | 3,763.31 |
| Invoice | 12/31/2015 | 12.15 | | 02/29/2016 | 13,361.05 | 24,538.47 | 587 | 322.31 | 13,683.36 |
| Invoice | 01/31/2016 | 1.16 | | 03/31/2016 | 12,334.98 | 29,631.75 | 557 | 282.35 | 12,617.33 |
| Invoice | 02/29/2016 | 2.16 | | 04/29/2016 | 21,321.28 | 42,441.97 | 528 | 462.64 | 21,783.92 |
| Invoice | 03/31/2016 | 3.16 | | 05/30/2016 | 26,549.71 | 47,617.45 | 497 | 542.27 | 27,091.98 |
| Invoice | 04/30/2016 | 4.16 | | 06/29/2016 | 19,411.23 | 45,031.23 | 468 | 373.33 | 19,784.56 |
| Invoice | 05/31/2016 | 5.16 | | 07/30/2016 | 23,958.72 | 48,390.98 | 437 | 430.27 | 24,388.99 |
| Invoice | 06/30/2016 | 6.16 | | 08/29/2016 | 19,990.15 | 41,870.80 | 408 | 335.18 | 20,325.33 |
| Invoice | 07/31/2016 | 7.16 | | 09/29/2016 | 17,390.70 | 36,426.18 | 378 | 270.15 | 17,660.85 |
| Invoice | 08/31/2016 | 8.16 | | 10/30/2016 | 7,869.07 | 25,888.42 | 347 | 112.22 | 7,981.29 |
| Invoice | 09/30/2016 | 9.16 | | 11/29/2016 | 18,667.26 | 36,618.87 | 318 | 243.95 | 18,911.21 |
| Invoice | 10/31/2016 | 10.16 | | 12/30/2016 | 21,892.72 | 39,776.59 | 287 | 258.21 | 22,150.93 |
| Invoice | 11/30/2016 | 11.16 | | 01/29/2017 | 21,644.50 | 21,644.50 | 258 | 229.49 | 21,873.99 |
| Invoice | 12/31/2016 | 12.16 | | 03/01/2017 | 27,508.75 | 27,508.75 | 226 | 255.49 | 27,764.24 |
| Invoice | 01/31/2017 | 1.17 | | 04/01/2017 | 38,843.89 | 38,843.89 | 196 | 312.88 | 39,156.77 |
| Invoice | 02/28/2017 | 2.17 | | 04/29/2017 | 35,797.18 | 35,797.18 | 168 | 247.15 | 36,044.33 |
| Invoice | 03/31/2017 | 3.17 | | 05/30/2017 | 25,915.97 | 25,915.97 | 137 | 145.91 | 26,061.88 |
| Invoice | 04/30/2017 | 4.17 | | 06/29/2017 | 22,217.14 | 22,217.14 | 108 | 98.61 | 22,315.75 |
| Invoice | 05/31/2017 | 5.17 | | 07/30/2017 | 41,525.80 | 41,525.80 | 77 | 131.40 | 41,657.20 |
| Invoice | 06/30/2017 | 6.17 | | 08/29/2017 | 44,551.20 | 44,551.20 | 48 | 87.88 | 44,639.08 |
| Invoice | 07/31/2017 | 7.17 | | 09/29/2017 | 41,376.46 | 41,376.46 | 18 | 30.61 | 41,407.07 |
| Invoice | 08/31/2017 | 8.17 | | 10/30/2017 | 1,229.95 | 1,229.95 | -13 | - | 1,229.95 |
| Invoice | 09/30/2017 | 9.17 | | 11/29/2017 | 145.52 | 145.52 | -42 | - | 145.52 |
| **Total FAC - St Francis** | | | | | 636,834.88 | 988,074.80 | | 9,215.58 | 646,050.44 |
| **TOTAL** | | | | | 636,834.88 | 988,074.80 | | 9,215.58 | 646,050.44 |